IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI, | ) | Civ. No. 05-00679 BMK |
| | ) | Civ. No. 06-00182 BMK |
| Plaintiff, | ) | Civ. No. 05-00787 BMK |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | DEFENDANTS' MOTION FOR |
| MOMMY GINA TUNA | ) | PARTIAL SUMMARY |
| RESOURCES, *et al.*, | ) | JUDGMENT ON INVALIDITY OF |
| | ) | KOWALSKI PATENT FOR |
| | ) | OBVIOUSNESS AND DENYING |
| Defendants . | ) | PLAINTIFF'S MOTION FOR |
| _____ | ) | PARTIAL SUMMARY |
| | ) | JUDGMENT ON DEFENDANTS' |
| WILLIAM R. KOWALSKI, | ) | OBVIOUSNESS AND |
| | ) | ANTICIPATION DEFENSES |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITRA MINA SEAFOOD | ) | |
| CORPORATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD FRIEND , and | ) | |
| SEAFRIEND | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON INVALIDITY OF KOWALSKI PATENT FOR OBVIOUSNESS AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' OBVIOUSNESS AND ANTICIPATION DEFENSES

Now before the Court is a motion for partial summary judgment filed on July 2, 2008 by Defendants Mommy Gina Tuna Resources, King Tuna, Inc., Joaquin Lu, Citra Mina Seafood Corporation, Richard Friend, and Seafriend (collectively, "the Defendants") to invalidate the patent of Plaintiff William R. Kowalski ("Kowalski") for failing to meet the nonobviousness requirement of 35 U.S.C. § 103.  Also before the Court is Kowalski's counter motion (styled as a "cross motion") for partial summary judgment on Defendants' obviousness and anticipation defenses, filed on July 22, 2008.  These motions were heard on August 19, 2008.  After careful consideration of the motions, the supporting and opposing memoranda, and the arguments of counsel, both motions are hereby DENIED.

As an initial matter, the Court will not consider Kowalski's request for summary judgment on anticipation.  Defendants did not move for summary judgment on anticipation, so anticipation is not the proper object of a counter motion.  See Local Rule 7.9 (requiring that "[a]ny motion *raising the same subject matter as an original motion* may be filed by the responding party together with

the party's opposition") (emphasis added).  To the extent that Kowalski may have intended his "cross motion" to stand as an independent motion, rather than as a counter motion, it was not timely filed.  The deadline for motions for summary judgment was July 2, 2008, and Kowalski's opposition and "cross motion" on anticipation and obviousness was filed on July 22, 2008.  Accordingly, the Court will address only Defendants' motion for summary judgment on obviousness, and Kowalski's timely filed counter motion on that same subject.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Avia Group Int'l v. L.A. Gear California Inc., 853 F. 2d 1557, 1560 (Fed Cir. 1988).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a

material issue of fact, summary judgment is improper. Hodash v. Block Drug Co., 786 F.2d 1136, 1141 (Fed. Cir. 1986)

The movant bears the initial burden of demonstrating the absence of all genuine issues of material fact. Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984).  Once this initial showing is made by the movant, the burden then shifts to the nonmovant to demonstrate the existence of a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

An accused infringer in a patent case may obtain summary judgment by either: (1) "providing evidence that would preclude a finding of infringement or (2) "by showing that the evidence on file nails to establish a material issue of facts essential to the patentee's case." Novartis Corp. V. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).

## OBVIOUSNESS

A patent may be determined to be invalid if it fails to comply with 35 U.S.C. § 103, which states in relevant part that "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." See 35 U.S.C. § 103(a).  In assessing whether a patent is

invalid for obviousness (1) "the scope and content of the prior art are to be determined"; (2) "differences between the prior art and the claims at issue are to be ascertained"; (3) "the level of ordinary skill in the pertinent art [is to be] resolved"; and, (4) "secondary considerations such as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." Graham v. John Deere Co. of Kansas City, 381 U.S. 1, 17 (1966).

The four Graham factors are deemed to be "factual inquiries," even though "the ultimate question of patent validity is one of law." Id.; see also In re GPAC, Inc., 57 F.3d 1573, 1577 (Fed. Cir. 1995). A district court can only invalidate a patent for obviousness at the summary judgment stage "when the[se] factual inquiries into obviousness present no genuine issue of material facts." Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1991). "The decision maker . . . after making findings as to the objective evidence, must subjectively analyze these factual findings to determine whether the teachings . . . could have been combined." Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 297 n.24 (Fed. Cir. 1985).

# BACKGROUND

Plaintiff Kowalski is the owner of U.S. Patent 5,972,401, titled "Process for Manufacturing Tasteless Super-Purified Smoke for Treating Seafood to be Frozen and Thawed," awarded to him on October 26, 1999 (hereinafter "the Kowalski Patent"), and has filed patent infringement actions against Defendants. On August 31, 2007, the Court held a Markman hearing to construe Claims 1 and 67 of the Kowalski Patent.  Claim 1 of the Kowalski Patent claims:

> 1. A process for treating meat comprising:
> heating organic material to generate smoke having a gaseous vapor phase;
> super purifying said smoke to reduce taste imparting components below thresholds for imparting smoke odor and taste, whereby a substantially tasteless super-purified smoke is created; and
> treating meat having a freezing point with said tasteless super-purified smoke.

(Kowalski Patent, Col. 22 -23, at 65.)  Claim 67 of the Kowalski Patent claims:

> 67. A process for treating food comprising:
> heating organic material to generate smoke;
> filtering components that impart smoke flavor from said Smoke to below limits for imparting smoke flavoring to food; and
> exposing said filtered smoke to food without imparting a smoke flavor to said food.

(Kowalski Patent, Col. 28, at 11-18.)

DISCUSSION

I.  GRAHAM FACTORS

    A.  The Scope and Content of Prior Art

The scope of prior art includes all art in the inventor's field, as well as "analogous art" that an inventor "would have consulted . . . and applied . . . in seeking a solution to the problem that the inventor was attempting to solve." Hedelberger Druckmaschinen v. Hantscho Commercial, 21 F.3d 1068, 1071 (Fed. Cir. 1994). An inventor is assumed to be familiar with all other art that is "reasonably pertinent to the particular problem confronting the inventor." In re GPAC, Inc., 57 F.3d at 1578 (internal quotations omitted). The scope of prior art is a question of fact for the jury. Shatterproof Glass Corp v. Libbey-Owens Ford Co., 758 F.2d 613, 620 (Fed. Cir. 1985) (affirming district court's jury instruction charging the jury with determining the scope and content of the prior art).

There is substantial agreement between Kowalski and Defendants regarding the scope and content of prior art.  The parties agree that there is an ancient history of using smoke to preserve meat and fish. More specifically, they agree that relevant prior art teaches that "smoke could be generated by heating organic material," that "smoke could be applied to food and has preservative effects," and that " smoke could be filtered of tars and other impurities so that the

7

remaining smoke imparts an agreeable smoke taste and smell to the food." (Pl.'s Mem. Opp. 31.)

Kowalski and Defendants disagree about the scope of prior art in three key areas. To provide clarity going forward, the Court will address the parties' positions on the following: the references to the production and use of carbon monoxide gas, the references that discuss the Pescarich manufacturing process, and U.S. Patent No. 5,484,619 ("the Yamaoka patent").

     1.  <u>Carbon Monoxide References</u>

Kowalski and Defendants disagree about whether the relevant prior art includes references to the production of carbon monoxide ("CO") gas through the filtration and purification of smoke made by burning organic matter.[1] Defendants argue that these references should be considered prior art for two reasons: because

---

[1]Specifically, Defendants point to the following prior art references on carbon monoxide production, filtration, and use: (1) U.S. Patent No. 927,418, teaching the production of carbon monoxide ("CO") gas through heating wood (Defs.' Ex. A); (2) U.S. Patent No. 1,027,681, also teaching the production of CO gas through heating wood (Defs.' Ex. B); (3) U.S. Patent No. 1,861,452, teaching the production of CO gas by heating coal (Defs.' Ex. C); (4) U.S. Patent No. 1,931,716, teaching the production of CO gas (Defs.' Ex. D); (5) U.S. Patent No. 2,527,197, teaching the production of CO gas (Defs.' Ex. E); (6) U.S. Patent No. 4,386,942, teaching that burning any carbon-containing material will produce a gas containing CO (Defs.' Ex. F); (7) <u>A Course in General Chemistry</u>, by William McPherson and William Henderson, 1921, teaching the mechanics of coal gas production (Defs.' Ex. Y); (8) U.S. Patent No. 2,930,704, teaching that applying CO to meat helps preserve its fresh color (Defs.' Ex. G); (9) U.S. Patent No. 4,522,835, teaching that exposing fresh fish to CO gas will retain the color of the fish (Defs.' Ex. H); (10) <u>Gas Manufacture (the Chemistry Of)</u>, by W. J. Atkinson Butterfield, 1896, teaching the generation and purification of CO gas (Defs.' Ex. AA); (11) <u>A Treatise on Gas-Works</u>, by Samuel Hughes, 1853, teaching the generation and purification of CO-containing gas (Defs.' Ex. BB); (12) a web page for Koyuncu, Ltd., offering for sale storage tanks for CO (Defs.' Ex. Z).

the CO gas in these references is created by producing and filtering smoke, which is an integral part of the Kowalski patent; and because CO gas has long been used to treat seafood to preserve its color and maintain the appearance of freshness, which is a principal object of the Kowalski patent.

Kowalski, on the other hand, contends that CO production and purification is neither within the field, nor "reasonably pertinent to solving the problem that Mr. Kowalski confronted." (Pl.'s Mem. Opp. 11.)  This is based on Kowalski's belief that use of carbon monoxide as a preservative was unacceptable from a business standpoint because CO "creates misleading color exaggeration and maintains that exaggerated color long after the fish spoils," because use of CO was prohibited by the government, and because " the public had a bad impression of it." (Pl.'s Mem Opp. 11.)  In support of these statements, Kowalski produces a 1997 letter from the FDA stating that CO was not generally recognized as safe ("GRAS") by the FDA (Pl.'s Ex. 3), and  newspaper articles demonstrating the negative public reputation of CO as a food preservative (Pl.'s Ex. 4, 5).  The parties have introduced competing evidence on this point, accordingly, as an initial step in the obviousness analysis, the jury will need to determine the scope of relevant prior art as it relates to the production and filtering of CO.

2.  Pescarich References

The second area of disagreement between the parties on the scope and content of prior art involves the references to the Pescarich process. These include a brochure distributed at a 1995 Sea Fare show (Defs.' Ex. L), a banner used by Pescarich at a the 1995 Sea Fare show (Defs.' Ex. M), a Pescarich brochure distributed in 1996 (Defs.' Ex. N), and a Pescarich brochure faxed to Hawaii International Seafood in 1998 (Defs.' Ex. O). These brochures advertise fish that is "'Smoked' yet 'Fresh'" (Defs.' Ex. L), and that "[t]hrough a unique cold smoking process, tuna is preserved in all its freshness – without the smokey taste" (Defs' Ex. N).

In addition to these written Pescarich references, Defendants produce the deposition testimony of Mr. Arlan Develos, who states that he saw and worked on a Pescarich machine that burned sawdust to produce smoke (Defs.' Ex. J), and accompanied by a picture purported to be of the Pescarich machine (Defs.' Ex. K). Defendants claim that the Pescarich process, as evidenced by the brochures and the banners, as well as the testimony of Develos and the photograph of a Pescarich machine, makes obvious a process for the treatment of seafood with filtered wood smoke that leaves the fish without a smokey taste.

In response, Kowalski argues that the references, testimony and pictures related to the Pescarich process cannot properly be deemed prior art because they do not contain an enabling disclosure, and "[i]n order to render a claimed apparatus or method obvious, the prior art must enable one skilled in the art to make and use the apparatus or method," Motorola, Inc. v. Interdigita Tech. Corp., 121 F.3d 1461, 1471 (Fed. Cir. 1997) (quoting Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)); see also In re Epstein, 32 F.3d 1559, 1568 (Fed. Cir. 1994).

Kowalski is correct; the Pescarich references are not properly considered within the scope of prior art because they fail to provide enabling disclosures about the art. To be relevant to the obviousness analysis, a prior art reference must disclose to the public the art in question, and "enable one skilled in the art to make and use the apparatus or method," Motorola, Inc., 121 F.3d at 1471. The Pescarich brochures and banner produced by Defendants merely discuss the existence of a process by which the fish is treated with a certain type of smoke that preserves the fish "without the smokey taste" (Defs. Ex. N). Likewise, nothing in either Develos' testimony[2] or in the accompanying photograph of the Pescarich

---

[2]Even were Develos' testimony an enabling disclosure, "oral testimony to establish the existence of allegedly anticipatory devices has long been viewed with skepticism." Sjolund v. Musland 847 F.2d 1573, 1578 (Fed. Cir. 1988).

machine demonstrate that the Pescarich process had been disclosed to the public in a way that would enable a person of ordinary skill in the art to employ that process. While the Pescarich references may provide evidence of secondary considerations relevant to the determination of obviousness, they cannot be deemed to fall within the scope of prior art.[3]

Defendants' argument that the Pescarich references must be considered prior art because the products produced by Pescarich were "on sale in this country, more than one year prior to the date of the application for patent," 35 U.S.C. § 102(b), is unavailing.  First, the Pescarich process itself was *not* on sale in this country–only the product produced with that undisclosed process.  Second, the Federal Circuit has never indicated that the on-sale bar of § 102(b) can provide a ground for rendering a patent obvious under § 103.  C.f. Motorola, Inc., 121 F.3d at 1471.

### 3.  Yamaoka Patent

The parties disagree as to the relevance of the Yamaoka patent as a source of prior art. The Yamaoka patent undeniably discusses the production of smoke, the filtration of that smoke, and the use of that smoke to treat seafood.  The

---

[3]Similarly, ththe GRAS Notification Summary of Hawaii International Seafood, Inc., stating that "[t]asteless smoke . . . has been present in the food supply as a component of conventional smoke, for centuries" (Defs.' Ex. T, at 6), cannot be deemed prior art because of its lack of enablement.  It may, however, be relevant to secondary considerations.

Yamaoka patent, however, has been construed by this court to claim a process "for filtering smoke to the extent that the smoke produced by the filtration is still able to impart a noticeable and 'agreeable' taste and smell to the fish," and that it "does not claim a process specifically intended to filter flavor-giving particles out of the smoke." (Claims Constr. Order 15.)

Kowalski therefore disputes the Yamaoka patent's relevance as prior art on the ground that it "teaches away" from what Kowalski sought to do, which was to preserve the color of fish without adding any smell or flavor. While the case law is somewhat unclear on this subject, it seems that the "teaching away" argument is more properly addressed in the third Graham factor inquiry, dedicated to evaluating the differences between the prior art and the claimed invention. C.f. KSR Intern. Co. v. Teleflex, Inc., 127 S.Ct. 1727, 1740-41 (2007) (cautioning that it is an error to assume "that a person of ordinary skill attempting to solve a problem will be led only by those elements of prior art designed to solve the same problem"). The Court finds that there is no genuine issue of material fact that the Yamaoka patent is within the scope of prior art: like the Kowalski patent, it claims a process for creating smoke, filtering it, and using that smoke to treat fish.

B.  <u>Level of Ordinary Skill in the Art</u>

There is little disagreement between the parties about the level of ordinary skill in the art. There is no dispute that the person of ordinary skill would have some familiarity with the steps of the Kowalski process: burning organic material to produce smoke; purifying the resulting smoke; and applying the purified smoke to seafood to preserve the appearance of freshness. Parties also agree that a person of ordinary skill in the art "need not have a Ph.D. or advanced certification." (Pl.'s Mem. Opp. 31.)

The parties disagree only about whether the hypothetical person of ordinary skill in the art would be experienced in the use of CO as a method of preserving the appearance of freshness in meat and seafood.  This question is not materially different than the dispute addressed in the preceding section over whether the scope of prior art includes CO production and purification. Accordingly, if the jury finds that production and purification of CO is within the scope of prior art for the Kowalski patent, then knowledge of such processes can similarly be attributed to one of ordinary skill in the art. Conversely, a finding that the production and purification of CO are not within the scope of prior art means that a person of ordinary skill in the art would not be familiar with these processes or references.

### C. Difference Between Prior Art and the Claimed Invention

The factual inquiry into the differences between prior art and the claimed invention cannot be fully completed until the jury resolves the scope of the prior art. Accordingly, the Court must now determine whether there is any genuine issue of material fact regarding the differences between the Yamaoka patent and the Kowalski patent.

Defendants argue that the Yamaoka patent is different from the Kowalski patent only in degree. They argue that one only has to add additional filters to the Yamaoka process in order to achieve smoke that imparts no taste to the fish. Kowalski, on the other hand, points to the references throughout the Yamaoka patent which emphasize how the Yamaoka process is designed to impart an "agreeable" taste to the fish. Kowalski claims that the difference between an "agreeable" taste and tastelessness is not merely a difference of degree, but is a fundamental difference of type. The Court finds that a reasonable jury could find either in favor of Defendants or in favor of Kowalski based on the language of these patents; a genuine issue of material fact therefore exists regarding the difference between the undisputed prior art and the Kowalski patent.

D.  Secondary Factors

In evaluating the obviousness of an invention, certain secondary factors, also called objective indicia, must also be considered. These include "commercial success, longfelt but unsolved needs, failure of others, etc." Graham, 383 U.S. 1, 18. These factors, in and of themselves, may strongly influence the determination of obviousness.

Defendants point to the formation of the Tasteless Smoked Seafood Association in 1997 as demonstrating the existence and ubiquity of tasteless smoke in the seafood industry.  They point to the commercial success enjoyed by others, and to Kowalski's own relative lack of commercial success as a result of his patent.

In response, Kowalski contends (or at least implies) that many people in this industry were not actually using tasteless smoke, but were either using CO, or were using the Yamaoka patent which produces smoke with an "agreeable flavor".  Kowalski also claims that he did achieve commercial success through the licensing of his patent to other companies, such as Hilo Fish, Kona Fish, Phillips Foods, Jana Brands, Taiwan Seafood, Thai Ocean Venture, Kagoshima, East Asia, Seaport, Angel Seafood, and others. Summary judgment is inappropriate because

16

the jury must weigh the conflicting evidence as regards objective indicia of obviousness.

## II. OBVIOUSNESS AS A MATTER OF LAW

After addressing the factual Graham inquiries, the decision maker "must subjectively analyze these factual findings to determine whether the teachings . . . could have been combined." Ashland Oil, Inc. 776 F.2d at 297 n.24 (Fed. Cir. 1985). Here, for the Court to engage in this step would be premature given the numerous unresolved factual inquiries. Accordingly, there remain genuine issues of material fact as to whether the Kowalski patent would have been obvious to a person of ordinary skill in the art, drawing on the prior art disclosed at the time of invention.

## CONCLUSION

For the foregoing reasons both Defendants' motion for partial summary judgment on obviousness, and Kowalski's motions for partial summary judgment on obviousness and anticipation are hereby DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 3, 2008.



       /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Kowalski v. Mommy Gina Tuna Resources, Civ. No. 05-00679 BMK; Kowalski v. Citra Mina Seafood Corp, Civ. No. 06-00182 BMK; Kowalski v. Friend; Civ. No. 05-00787 BMK; ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON INVALIDITY OF KOWALSKI PATENT FOR OBVIOUSNESS AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' OBVIOUSNESS AND ANTICIPATION DEFENSES.