IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI | ) | CIV. NO. 05-00679-BMK |
| | ) | CIV. NO. 06-00182-BMK |
| Plaintiff, | ) | (CONSOLIDATED) |
| | ) | |
| vs. | ) | |
| | ) | ORDER (1) GRANTING IN PART |
| MOMMY GINA TUNA | ) | AND DENYING IN PART |
| RESOURCES, et al. | ) | PLAINTIFF'S MOTION FOR |
| | ) | ENHANCED DAMAGES, (2) |
| Defendants. | ) | DENYING PLAINTIFF'S MOTION |
| _____ | ) | FOR ATTORNEY'S FEES, AND (3) |
| WILLIAM R. KOWALSKI | ) | GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| Plaintiff, | ) | MOTION FOR PREJUDGMENT |
| | ) | AND POST-JUDGMENT |
| vs. | ) | INTEREST |
| | ) | |
| INTEGRAL SEAFOOD LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR ENHANCED DAMAGES, (2) DENYING PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, AND (3) GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT AND
<u>POST-JUDGMENT INTEREST</u>

In the above captioned consolidated cases, Plaintiff William R.

Kowalski obtained a jury verdict against Defendants Momma Gina Tuna

Resources, King Tuna, Inc., Joaquin T. Lu and Citra Mina Seafood Corp.

(collectively "Defendants")[1] on December 12, 2008 for willful infringement of Kowalski's U.S. Patent 5,972,401 ("Kowalski patent").  Mr. Kowalski filed several post-trial motions including (1) a motion for enhanced damages under 35 U.S.C. § 284, (2) a motion for attorney's fees and disbursements under 35 U.S.C. § 285, and (3) a motion for prejudgment interest under 35 U.S.C. § 284 and post-judgment interest under 28 U.S.C. § 1961.  Pursuant to Local Rule 7.2(d), the Court has deemed these motions appropriate for disposition without a hearing.  After careful consideration of the motions, as well as the supporting and opposing memoranda of the parties, Kowalski's motion for enhanced damages is GRANTED IN PART and DENIED IN PART, his motion for attorney's fees and disbursements is DENIED, and his motion for prejudgment interest and post-judgment interest is GRANTED IN PART and DENIED IN PART.

---

[1] In addition to the Defendants here named, Mr. Kowalski also brought suit against Richard Friend and his company Seafriend. Prior to trial, however, Mr.Kowalski dismissed all claims for willful infringement and for monetary damages against Friend and Seafriend. Also, subsequent to the initiation of this suit, Mr. Kowalski joined Citra Mina Property Holdings, GJ Fresh, LLC, Integral Seafood, LLC and Momma Gina Tuna Resources, Inc (collectively "25(c) parties") under Fed. R. Civ. P. 25(c) as successors in interest to the originally named defendants. However, the parties agree that the independent actions of the 25(c) parties were unrelated to the jury's finding of willfulness and are therefore irrelevant to the determination of enhanced damages and the award of attorney's fees.

## **ENHANCED DAMAGES**

In a suit for patent infringement, the court may award a prevailing patent holder enhanced damages "up to three times the amount found or assessed." 35 U.S.C. § 284. Such enhanced damages may be awarded when the defendant's infringement is found willful based on a "showing of objective recklessness." In Re Seagate Tech., LLC., 497 F.3d 1360, 1371 (Fed. Cir. 2007). However, "[a] finding of willfulness does not mandate enhanced damages; thus the district court retains discretion to enhance damages." Electro Sci. Indus. v. Gen. Scanning, 247 F.3d 1341, 1353 (Fed. Cir. 2001).

The determination of whether to award enhanced damages hinges on "the egregiousness of the defendant's conduct based on all the facts and circumstances." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992). Courts consider several factors, referred to as the Read factors, in deciding whether to award enhanced damages. These factors include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) the closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; (9) whether defendant attempted to conceal its misconduct.

Liquid Dynamics Corp. v. Vaughn Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006)(citing Read, 970 F.2d at 826-27.)

    A. Deliberate copying

Kowalski argues that the jury's finding of willful infringement proves that Defendants deliberately copied Kowalski's patent. Indeed, the Court has found that the process Defendants used – by which they produced smoke, filtered the smoke to remove components that impart smoke taste, and applied the smoke to seafood – is covered by and infringes the Kowalski patent. (Order Further Construing the Kowalski Patent, and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment on Infringement 17-18.) However, Defendants contend that they believed that their process was covered by U.S. Patent No. 5,484,619 ("Yamaoka patent"), and was derived from processes that had been in use in the Philippine fishing industry for years. There is no evidence that Defendants deliberately copied the Kowalski patent, therefore this factor weighs against granting enhanced damages.

    B. Investigation and good faith belief in invalidity

Kowalski argues that Defendants failed to adequately investigate the validity of the Kowalski patent and lacked a good faith belief in its invalidity. Kowalski argues that this is proven by the jury's finding of willfulness. Defendants

maintain that they did not believe that their operations were infringing a valid patent because (1) they were operating within the scope of the Yamaoka patent and (2) the process being used had been in use in the Philippine seafood industry for many years. While Defendants' arguments proved legally insufficient, this does not make them inherently incredible or unreasonable. Mr. Lu and the other Defendants did not obtain an exculpatory attorney's opinion of invalidity, but they did seek various opinions on the matter, from attorneys and others they considered knowledgeable. (Def. Opp. 15). See In Re Seagate, 497 F.3d at 1371 ("[W]e also reemphasize that there is no affirmative obligation to obtain opinion of counsel."). Thus, the evidence supports a finding that Mr. Lu and the other Defendants had a common sense conviction that the Kowalski patent was invalid. However, they failed to conduct a reasonable inquiry into the legal sufficiency of their belief. This factor is neutral as to awarding enhanced damages.

 C. Behavior in litigation

   This was a closely contested case. Neither party to this action exhibited exemplary conduct in the course of litigation and trial. Kowalski points to Defendants' discovery delays and the shifting of business assets to the 25(c) parties. Leaving aside whether the latter is relevant to this prong of the Read analysis, Kowalski's argument is unconvincing. He, too, was guilty of discovery

delays, recalcitrant behavior and evasiveness with regard to directives of the court. This factor is neutral as to awarding enhanced damages.

    D. Size and financial condition of defendants

Defendants are clearly the larger and better financially positioned party. While Defendants have enjoyed consistent profits from their seafood business, Kowalski's business has lost money through most years of its operation. Defendants correctly point out that only a portion of Mr. Lu's assets and business activity is directly related to the production of seafood treated with tasteless smoke. Still, this factor tips towards awarding enhanced damages.

    E. Closeness of the case

Kowalski argues that the case was not close. He points to numerous victories during the course of litigation: during the claims construction process, on summary judgment for infringement, on those of Defendants' invalidity defenses that were dismissed before trial, and with respect to the ultimate jury verdict. However, Plaintiff's argument ignores the fact that success for Defendants at any of these junctures would have resulted in a complete victory for Defendants. The central question of the case was patent validity, and this remained a close issue throughout litigation with several invalidity defenses withstanding summary

6

disposition.  Because this case was a close one, this factor tips against awarding enhanced damages.

F. Duration of misconduct

Defendants' infringement began when the Kowalski patent issued in October 1999 and continued until the Court granted summary judgement on the issue of infringement in September 2008.  Defendants' argument that the duration of misconduct is distinguishable from the duration of infringement is unconvincing; the case law is clear that willful infringement is itself misconduct.  See Beatrice Foods Co. v. New England Printing and Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991)(holding that enhanced damages are a penalty for "infringer's increased culpability, namely willful infringement or bad faith.")  The long period of willful infringement by Defendants weighs in favor of granting enhanced damages.

G. Remedial action by Defendants

In the present case, Defendants believed the Kowalski patent to be invalid, therefore their obligation to effect remediation are somewhat circumscribed.  Defendants should not, for instance, be expected to design around a process they believed they practiced first and that they believed to have been obvious in the industry.  However, Defendants took no steps to avoid infringing the

Kowalski patent until this Court's September 2008 order granting summary judgment on the issue of infringement.  Defendants argue that the voluntary decision to cease infringing operations at that time, in the absence of an injunction, represents a significant remedial step.  Under the circumstances of this case, this factor is neutral as to awarding enhanced damages.

    H. Motivation for harm

Kowalski alleges a wide range of actions by Defendants signify their intent to harm Kowalski's interests.  These include forming Tuna Processors, Inc. ("TPI") with the express purpose of challenging the Kowalski patent (Pl. Ex. Y at ¶ 12), cutting off Mr. Kowalski's access to the smoke necessary to practice his process by purchasing his smoke supplier Frescomar (Pl. Ex. BB at ¶ 4.e), and advocating to the Philippine Intellectual Property Office against granting Mr. Kowalski a patent for his invention. (Pl. Ex. CC. at 1-3.)  Defendants' argue that there were legitimate reasons for each of these actions other than harming Mr. Kowalski.  However, there is ample evidence of Defendants' intent to harm Mr. Kowalski's interests, and this factor weighs in favor of awarding enhanced damages.

I. Concealment

Plaintiff contends that Defendants took certain actions for the purpose of concealment and to avoid execution of judgment. It is true that Defendants' response to discovery in this case was not always timely or complete, but neither was Plaintiff's. Defendants did shift assets and operations to the 25(c) parties subsequent to the commencement of this litigation. However, Defendants made no effort to conceal their infringing operation. Therefore, this factor is neutral as to awarding enhanced damages.

After analyzing the Read factors, the Court finds the question of enhanced damages a close one. Three of the Read factors weigh towards granting enhanced damages; two of the Read factors weigh against granting enhanced damages; and four of the Read factors are neutral. The jury's finding of willful infringement is sufficient to support enhanced damages, but does not necessitate such an award. Granting or withholding an award and the amount of any such award, therefore, is within the discretion of the court. Nat'l Presto Indus. v. West Bend Co., 76 F.3d 1185, 1193 (Fed. Cir. 1996)("The enhancement of damages is a discretionary ruling of the court.")

The Court finds that enhanced damages are appropriate in the present case in light of the purpose behind such damages. "The statute [] recognizes the

tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive." SRI Int'l v. Advanced Tech. Lab., 127 F.3d 1462, 1464 (Fed. Cir. 1997).  The intent of an award of enhanced damages is to punish and discourage willful infringement and to "quantify[] the equities as between patentee and infringer."  Id. at 1468.  In the present case, the Court has found that Defendants were motivated to harm Mr. Kowalski's interests, that Defendants misconduct was of long duration and that Defendants enjoyed a superior financial position.  Therefore, enhanced damages are warranted as a punitive measure to discourage future misconduct by Defendants and to balance the equities between the parties.

The Court finds that an enhancement of 30% of the jury's award of $4,488,888.60, for a total enhancement of $1,346,666.58 is appropriate in this case.  This was a closely contested case.  Defendants' invalidity defenses, while ultimately unsuccessful, were not unreasonable or wholly without merit.  An award of this size is sufficient to discourage future infringement by Defendants without unduly penalizing Defendants or providing a windfall to Plaintiff.  Plaintiff's Motion for enhanced damages is GRANTED IN PART and DENIED IN PART.

## **ATTORNEY'S FEES**

Plaintiff seeks attorney's fees in the amount of $1,140,692.04. When patent infringement has been found, "[t]he court may award reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285. In deciding whether to grant attorney's fees to the prevailing party, the court must first determine whether the case is exceptional. If the case is found to be exceptional, the court must then decide whether to award fees. The determination of whether a case is exceptional is a question of fact, the decision to award fees is within the discretion of the court. Reactive Metals & Alloys Corp. v. Esm, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985). Typically a verdict of willful infringement is sufficient to warrant a finding that the case is exceptional; however, a finding of exceptional circumstances does not "mandate an award of attorney fees." Id.; see also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986) ("The trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser.").

A. Prevailing Party

An award of attorney's fees is permissible only when the patent holder is the prevailing party. Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553 (Fed. Cir. 1989). The Court finds that Plaintiff was the prevailing party in this action. It is true that shortly before trial, Plaintiff voluntarily dismissed his claims against Richard Friend and Seafriend for monetary damages and for willful infringement. However, Plaintiff prevailed on most individual issues in this litigation, and on the central issues of the litigation – infringement and patent validity – Plaintiff secured unequivocal victories. Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)("Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation . . . ."). Defendants do not contest that Plaintiff was the prevailing party.

B. Exceptional circumstances

The Court finds that the present case is exceptional. The jury's finding of willful infringement is sufficient to warrant a factual finding of exceptional circumstances. Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 455 (Fed. Cir. 1985)("[E]xceptional circumstances include willful

infringement, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit.")  The Court's conclusion that an analysis under the Read factors warrants an award of enhanced damages also supports a finding of exceptional circumstances.

    C. Court's discretion to award fees

Although this case presents exceptional circumstances, the Court declines to exercise its discretion to award attorney's fees.  While enhanced damages are intended to punish the misconduct of an infringer, an award of attorney's fees is determined based on the balance of equities in the case. Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1582 (Fed. Cir. 1992)("[T]he trial court has broad discretion in the criteria by which it determines whether to award attorney fees").  Here, the balance of equities do not support awarding Plaintiff fees in addition to enhanced damages.

Defendants believed that the Kowalski patent was invalid because the process it covered was similar to the process covered by the Yamaoka patent.  In addition, similar processes had been practiced in the Philippine seafood industry for years.  While Defendants' invalidity arguments ultimately failed, their defense of the suit was neither frivolous nor vexatious.  If any litigation misconduct

occurred, blame can be apportioned to both parties.  The jury's award

$4,488,888.60 in damages is near the high end of damages sought and is adequate

to compensate Mr. Kowalski.  The Court's award of $1,346,666.58 in enhanced

damages will discourage future misconduct by Defendants and is more than

sufficient to allow Mr. Kowalski to recoup his litigation expenses.  An award of

attorney's fees in addition to enhanced damages would not serve to balance the

equities between the parties, but rather would provide a windfall to Mr. Kowalski.

Plaintiff's Motion for attorney's fees is DENIED.

## PREJUDGMENT AND POST-JUDGMENT INTEREST

Mr. Kowalski has moved for prejudgment interest under 35 U.S.C. §

284 and for post-judgment interest under 28 U.S.C. § 1961.  The Court awards Mr.

Kowlaski both prejudgment and post-judgment interest at the rate of the weekly

average one-year constant maturity treasury yield.

35 U.S.C. § 284 provides that "[u]pon finding for the claimant, the

court shall award the claimant damages . . . together with interest and costs fixed

by the court."  Prejudgment interest is awarded "to ensure that the patent owner is

placed in as good a position as he would have been had the infringer entered into a

reasonable royalty agreement."  Bio-Rad Lab., Inc. v. Nicolet Instr. Corp., 807

F.2d 964, 969 (Fed. Cir. 1986). The determination of the prejudgment interest rate is within the discretion of the court. See Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791 (Fed. Cir. 1990).

Mr. Kowalski argues that the appropriate rate for the calculation of prejudgment interest in this case is the prime lending rate or, in the alternative, the 6-month CD rate. Mr. Kowalski argues that these rates are more appropriate than the weekly average one-year constant maturity treasury yield rate proposed by Defendants because Defendants' infringement resulted in Mr. Kowalski's company, Hawaii International Seafood, Inc. ("HISI") being forced to borrow money at the prime lending rate or even higher interest rates. Where a Plaintiff is a net borrower, "the cost of borrowing money – and not the rate of return on investing money – provides a better measure of the harm [Plaintiff] suffered as a result of the loss of the use of money over time." Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21 (D. Del. 1993).

Here, however, it is Mr. Kowalski, not HISI, that is to be compensated for Defendants' infringement. Just as profits cannot be presumed to flow through HISI to Mr. Kowalski, neither can Mr. Kowalski be compensated for the cost of HISI's indebtedness. (Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment on Damages 6-7.) No causal link between

Defendants' infringement and the loans taken out by HISI has ever been proven. (Order Granting Defendants' Motion for Judgment as a Matter of Law that Plaintiff William Kowalski is Prevented from Claiming any Damages Outside a Reasonable Royalty Rate 5-6.) The Court agrees with Defendants that the proper methodology for calculating prejudgment interest in this case is the weekly average one-year constant maturity treasury yield. The Court orders that Mr. Kowalski be awarded **$773,910.03** in prejudgment interest.[2]

---

[2]

| CALCULATION OF PREJUDGMENT INTEREST ||||||
|---|---|---|---|---|---|
| Year | Annual Royalties | Avg Rate | Beginning Principal | Annual Interest | Year-End Balance |
| 2000 | $387,331.80 | 6.11% | $387,331.80 | $23,665.97 | $410,997.77 |
| 2001 | $430,495.00 | 3.49% | $841,492.77 | $29,368.10 | $870,860.87 |
| 2002 | $408,199.40 | 2.0% | $1,279,060.27 | $25,581.21 | $1,304,641.48 |
| 2003 | $366,188.80 | 1.24% | $1,670,830.28 | $20,718.30 | $1,691,548.57 |
| 2004 | $716,140.60 | 1.89% | $2,407,689.17 | $45,505.33 | $2,453,193.50 |
| 2005 | $848,083.40 | 3.62% | $3,301,277.90 | $119,506.26 | $3,420,784.16 |
| 2006 | $534,519.20 | 4.94% | $3,955,303.36 | $195,391.99 | $4,150,695.34 |
| 2007 | $534,519.20 | 4.53% | $4,685,214.54 | $212,240.22 | $4,897,454.76 |
| 2008 | $263,411.40 | 1.83% | $5,160,866.16 | $94,443.85 | $5,255,310.01 |
| 2009 | $0 | 0.57%* | $5,255,310.01 | $7,488.82** | $5,263,061.59 |
| Total | $4,488,888.80*** | | | **$773,910.03** | |

The table above shows the manner in which prejudgment interest was calculated. The Court used the historical data on constant maturity treasury yield rates provided by Mr. Kowalski

Parties agree that post-judgment interest, calculated as set forth in 28 U.S.C. § 1961, is appropriate in this case. Post-judgment interest at the rate of the standard weekly average one-year constant maturity treasury yield will run from the date this order is filed until the judgment is paid.

## **CONCLUSION**

For the foregoing reasons, Mr. Kowalski's Motion for Enhanced Damages is GRANTED IN PART and DENIED IN PART, Mr. Kowalski's Motion for Attorney's fees is DENIED, and Mr. Kowalski's Motion for Prejudgment and Post-Judgment Interest is GRANTED IN PART and DENIED IN PART. Mr. Kowalski is hereby awarded $1,346,666.58 in enhanced damages and $773,910.03 in prejudgment interest. He will also be eligible for post-judgment interest at the rate described above.

---

in Exhibit G to his Motion. Defendants acknowledge the accuracy of Mr. Kowalski's historical data. (Def. Opp. 8).
\* Calculated based on monthly and weekly averages through 3/30/2009.
\*\* Prorated for three months of accrued interest.
\*\*\* The jury actually awarded $4,488,888.60. However, because the royalty rate adopted by the jury is consistent with a total of $4,488,888.80, it is likely that the discrepancy was the result a arithmetic error. Therefore, while the actual award and the award of enhanced damages are based on the jury's figure of $4,488,888.60, the calculations here are based on a figure of $4,488,888.80, which comports with the evidence on the number of pounds of tuna sold by Defendants.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: March 30, 2009

Kowalski v. Mommy Gina Tuna Resources, Civ. No. 05-00679 BMK; Kowalski v. Citra Mina Seafood Corp, Civ. No. 06-00182 BMK; ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENHANCED DAMAGES, (2) DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, AND(3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST