IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI | ) | CIV. NO. 05-00679-BMK |
| | ) | CIV. NO. 05-00787-BMK |
| Plaintiff, | ) | CIV. NO. 06-00182-BMK |
| | ) | (CONSOLIDATED) |
| vs. | ) | |
| | ) | |
| MOMMY GINA TUNA | ) | FINDINGS OF FACT AND |
| RESOURCES, et al. | ) | CONCLUSIONS OF LAW RE |
| | ) | DEFENDANTS' OBVIOUSNESS |
| Defendants. | ) | DEFENSE |
| _____ | ) | |
| WILLIAM R. KOWALSKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEGRAL SEAFOOD LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| WILLIAM R. KOWALSKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD FRIEND, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DEFENDANTS' OBVIOUSNESS DEFENSE

Plaintiff William R. Kowalski brought suit in the above captioned consolidated cases for patent infringement against defendants Citra Mina, Mommy Gina Tuna Resources, King Tuna, Richard Friend and Seafriend.[1]  Pursuant to 28 USC 636(c), Fed. R. Civ. P. 73 and Local Rule 73.1, the parties consented to trial before a United States Magistrate Judge.  This case was heard at a jury trial that lasted from November 5, 2009 to December 11, 2009.

On December 12, 2009, the jury returned a verdict finding that Defendants had wilfully infringed the Kowalski patent, rejecting Defendants' defenses that the Kowalski patent was non-enabling or invalid as beyond the written description, and awarding M. Kowalski $4,488,888.60 in damages.  The jury also made certain factual findings with regard to Defendants' defense of obviousness.  The ultimate determination on the issue of obviousness is for the Court.  Having carefully considered the jury's findings, the evidence presented at trial and the applicable law, the Court CONCLUDES that Defendants have failed

---

[1]  Citra Mina Property Holdings, GJ Fresh LLC, Integral Seafood  LLC, Mommy Gina Tuna Resources, Inc. (Hereinafter referred to as "25(c) parties") were subsequently joined under Fed. R. Civ. P. 25(c).  The actions of the 25(c) parties are irrelevant to the determination of obviousness.  Prior to the beginning of trial, Mr. Kowalski dismissed his claims for willful infringement and monetary damages against Richard Friend and Seafriend.  Mr. Friend and Seafriend continued to defend against Mr. Kowalski's claim of infringement based on defenses to patent validity, including the defense of obviousness addressed herein.

to establish by clear and convincing evidence that the Kowalski patent is invalid

for obviousness.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The substance of each of the following statements shall govern

whether it is treated as a finding of fact or conclusion of law.

Plaintiff William R. Kowalski was issued U.S. Patent No. 5,972,401

titled "Process for Manufacturing Tasteless Super-Purified Smoke For Treating

Seafood to be Frozen and Thawed" on October 26, 1999 (the "Kowalski Patent")

from provisional application No. 60/040,731 filed on March 12, 1997.  (Admitted

Trial Exhibit ("T. Ex.") "1" at 1.)  Plaintiff's invention, referred to in the seafood

industry as "tasteless smoke" is for a process or method that uses smoke to

preserve the appearance of freshness in fish that is frozen and thawed, without

giving the food a smoke taste.[2]  The claims of the Kowalski patent relevant to the

present litigation are claims 1 and 67.

Claim 1 of the Kowalski Patent claims:

1.  A process for treating meat comprising:
heating organic material to generate smoke having a gaseous vapor phase;
super purifying said smoke to reduce taste imparting components below

---

[2]  As construed by the Court, smoke taste as used in the claims of the Kowalski patent refers to a smoked or smoky taste.  (Order Further Construing the Kowalski Patent, and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment on Infringement 17.)

thresholds for imparting smoke odor and taste, whereby a substantially
tasteless super-purified smoke is created; and
treating meat having a freezing point with said tasteless super-purified
smoke.

T. Ex. "1" at Col. 22, ln. 65-67, Col. 23, ln. 1-6.

Claim 67 of the Kowalski Patent claims:

67.  A process for treating food comprising:
heating organic material to generate smoke;
filtering components that impart smoke flavor from said smoke to below
limits for imparting smoke flavoring to food; and
exposing said filtered smoke to food without imparting smoke flavor to said
food.

T. Ex. "1" at Col. 28, ln. 11-18.

Defendants assert that Claims 1 and 67 of the Kowalski Patent are

invalid as obvious under 35 U.S.C. § 103.  A patent may be determined to be

invalid if it fails to comply with 35 U.S.C. § 103, which states in relevant part that

"[a] patent may not be obtained . . . if the differences between the subject matter

sought to be patented and the prior art are such that the subject matter as a whole

would have been obvious at the time the invention was made to a person having

ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).

Obviousness must be established by clear and convincing evidence.

Kao Corp. v. Unilever United States, Inc., 441 F.3d 963, 968 (Fed. Cir. 2006).  The

ultimate legal conclusion as to obviousness is based on four predicate factual

4

inquiries:  (1) the scope and content of the prior art; (2) the differences between the prior art and the patent claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations.  Graham v. John Deere Co. of Kansas City, 381 U.S. 1, 17 (1966).  The four Graham factors are deemed to be "factual inquiries," even though the "ultimate question of patent validity is one of law."  Id.

I.     Scope and Content of the Prior Art

A reference is prior art if "the reference is within the inventor's field of endeavor, and if it is not . . . if the reference is reasonably pertinent to the particular problem confronting the inventor.  A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem."  In re GPAC, 57 F.3d at 1577-78.

To constitute prior art for purposes of "obviousness" the reference must enable a person to make the invention.  Motorola, Inc. v. Interdigita Tech. Corp., 121 F.3d 1461, 1471 (Fed. Cir. 1997).  Use of a process in a foreign country does not constitute "prior art".  E. I. du Pont de Nemours & Co. v. Berkley and Co., Inc., 620 F.2d 1247, 1265 (7th Cir. 1980).

The Court found as a matter of law that US Patent No. 5,484,619 (1996) entitled "Method for Curing Fish and Meat by Extra-Low Temperature Smoking" to Yamaoka, et al. ("Yamaoka patent") is prior art.  (Order Denying Defendants' Motion for Partial Summary Judgment on Invalidity of Kowalski Patent for Obviousness and Denying Plaintiff's Motion for Partial Summary Judgment on Defendants' Obviousness and Anticipation Defenses 13.)  The Court also ruled as a matter of law that references describing the process practiced by Pescarich ("Pescarich process") "are not properly considered within the scope of the prior art because they fail to provide enabling disclosure about the art."  (Id. at 11.)

At trial, Defendants introduced into evidence and elicited testimony of witnesses aimed at establishing that the following U.S. Patents are within the scope of prior art for purposes of determining whether Claims 1 and 67 of the Kowalski Patent are obvious:  U.S. Patent Nos. 927,418 (1909) entitled "Process of Manufacturing Gas from Wood" to Loomis and Pettibone (see Exhibit "516") ("Loomis Patent"), 1,027,681 (1912) entitled "Manufacture of Gas" to Williams (see Exhibit "506") ("Williams Patent"), 4,522,835 (1985) entitled "Process and Composition for Producing and Maintaining Good Color in Fresh Meat, Fresh

Poultry and Fresh Fish" to Woodruff (see T. Ex. "2" at K000151-K000156)

("Woodruff Patent"), and 3,122,748 (1964) entitled "Meat Package and Method of

Preparing Same" to Beebe (see T. Ex. "2" at K000140-K000143) ("Beebe Patent").

At the close of evidence, the Court took judicial notice of U.S. Patent Nos.

1,861,452 (1932) entitled "Process of Producing Coal Gas" to Rusby and Battin

(see T. Ex. "507") ("Rusby Patent"), 2,527,197 (1950) entitled "Method of

Producing a Carbon Monoxide and Hydrogen Gas Mixture from Carbonaceous

Materials" to Rollman (see T. Ex. "509") ("Rollman Patent"), and 4,386,942 (1983)

entitled "Production of H2 and CO-Containing Gases" to van Heek (see T. Ex.

"511") ("Van Heek Patent").

   The jury found that the Loomis Patent and Woodruff Patent are

relevant prior art, but that the Rusby Patent, Rollman Patent, Van Heek Patent,

Williams Patent and Beebe Patent were not prior art.  (Special Verdict Form 3-5.)

Thus, for purposes of determining whether claims 1 and 67 of the Kowalski Patent

are obvious or non-obvious, the relevant prior art is limited to the Yamaoka Patent,

Loomis Patent and Woodruff Patent.

**The Yamaoka Patent**

   With respect to the step of filtering the smoke, the Yamaoka patent

states that:  "The smoke produced in the smoke-filtering unit that removes mainly

unwanted tar but passes the smoke with ingredients exerting highly preservative, sterilizing and color-keeping actions.  Various types of filters catching relatively larger particles consisting mainly of tar can be used singly or by combining filters of different mesh sizes."  According to the specification of the Yamaoka patent, the claimed method imparts an agreeable taste, flavor and smell.  The specification also says that with the claimed method "The aromatic smell characteristic of smoked products can be easily raised" (Id. at K000297 at Col. 7, ln. 4-7) and that persons who tasted the smoke slices said fish treated with the method had commented "Taste:  Tastiness unique to smoked products." (Id. at K000296 at Col. 6, ln. 39-40, 44).

**The Loomis Patent**

The Loomis Patent issued in 1909 discloses a method of creating producer gas by using a boiler connected to two generators, both containing burning wood sitting on "incandescent hard coal or coke", with the flame and hot products from the wood drawn down into the incandescent coal or coke.  Producer gas is a fuel that was used to create energy to light street lights and run motor vehicles.  The Loomis Patent does not relate to food processing, nor is there any discussion or indication of whether the product of the process claimed therein is suitable for use on food.

**The Woodruff Patent**

The Woodruff Patent relates to the use of carbon monoxide gas to establish and maintain good color on the surface of fresh meat, poultry and fish, and does not discuss smoke generation, smoke filtration or the use of smoke to treat food or preserve the appearance of freshness.  The Woodruff Patent only deals with color on the surface of the meat, down "to a depth of not more than about 0.375 inch below the surface."  Such a process would not be suitable for fish to be sold sliced into small pieces and served raw as sashimi, or atop rice as sushi.

II.    Differences Between the Invention and the Prior Art

"[T]o invalidate claimed subject matter for obviousness, the combined teachings of the prior art references must suggest, expressly or by implication, the improvements embodied by the invention."  In re GPAC, 57 F.3d at 1573.

None of the references found by the Court and the jury to be prior art – Yamaoka Patent, Loomis Patent or Woodruff Patent – discloses a method for the use of smoke to preserve the fresh appearance of seafood in which the smoke has been filtered to reduce flavor and odor causing compounds below the threshold for imparting a smoke taste or odor to the seafood.

During prosecution of the Kowalski patent before the United States Patent and Trademark Office ("USPTO"), the patent examiner Drew Becker and supervising examiner David Lacey concluded in their Interview Summary that "applicant [Kowalski] defines over prior art of record [Yamaoka, etc.] by not imparting smoke taste & flavor & odor."  (T. Ex. "2" at K000418.)

The jury rejected Defendants' contention that there was no difference between what was taught by the invention and what was known in the prior art. (Special Verdict Form 7.)  Instead, the jury found that "The invention taught the use of smoke, filtered below the threshold for imparting a smoke taste, for preserving the appearance of freshness in seafood.  The prior art taught the use of filtered smoke that retained a smoked taste and the use of chemical carbon monoxide for preserving the appearance of freshness in food."  (Id.)

III.    Level of Ordinary Skill in the Art

Whether an invention is obvious is determined from the standpoint of a hypothetical person having ordinary skill in the relevant art.  Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 454 (Fed. Cir. 1985).  A person of ordinary skill in the art is presumed to be one who thinks along the line of conventional wisdom and is not one who undertakes to innovate.  Id.

10

Factors relevant to determining the level of ordinary skill in the art "include without limitation (1) the educational level of the inventor; (2) the types of problems encountered in the art; (3) the prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) the sophistication of the technology; (6) the educational level of active workers in the field." Proctor & Gamble Co. v. Teva Pharm. USA, Inc., 536 F. Supp. 2d 476, 491-92 (D. Del. 2008).

The parties agree that a person of ordinary skill in the relevant field would not necessarily have a Ph.D. or other advanced degree or certification.  The jury determined that a person of ordinary skill in the relevant field would be familiar with (1) the steps of burning organic material to produce smoke; (2) filtering the resulting smoke; (3) applying the filtered smoke to seafood to preserve the appearance of freshness; but (4) would not necessarily have more than limited experience with various methods of producing and applying carbon monoxide to seafood to preserve the appearance of freshness.  (Special Verdict Form 6.)  The jury rejected the view that a person of ordinary skill in the relevant field "would have experience producing carbon monoxide gas by (a) mixing specific chemicals and (b) by burning organic material (including coal) and

filtering the products of that combustion to retain only the carbon monoxide gas, and … would be familiar with various means of applying the carbon monoxide gas to seafood to preserve the appearance of freshness."  (Special Verdict Form 6-7.)

## IV.   Secondary Considerations

"[O]bjective evidence of non-obviousness, i.e., secondary considerations … is a necessary part of the obviousness determination [and it] may be used to rebut a prima facie case of obviousness based on prior art references." WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed. Cir. 1999). "[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record. . . . It is to be considered as part of all the evidence, not just when the decision maker remains in doubt after reviewing the art." Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

The jury found the following secondary indicia of obviousness to be present in this case:  commercial success due to the merits of the claimed invention; satisfaction of a long felt need by the invention; unsuccessful attempts by others to find the solution provided by the invention; copying of the invention by others; unexpected or superior results; praise and licencing of the invention by others; evidence the invention proceeded in a direction contrary to accepted

wisdom in the field; and surprise and disbelief regarding the invention by experts and those skilled in the art.  (Special Verdict Form 7-8.)  The jury did not find that the invention had been independently invented by others before or at the same time the named inventor thought of it.  (Id. at 8.)  All these findings by the jury support a legal conclusion of non-obviousness.

**Commercial Success**

Commercial success is "[u]sually shown by significant sales in a relevant market."  J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997).  Sales of infringing parties should be taken into account. Brown & Williamson Tobacco Corp. v. Philip Morris, Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000).

Plaintiff presented evidence that Plaintiff's company Hawaii International Seafood Inc. ("HISI") sold between 1.25 and 2.5 million pounds of seafood treated with tasteless smoke each year from 2000 through 2006.  (T. Ex. 499.039.)  Plaintiff presented evidence that Plaintiff's licensees Hilo Fish Co. and Kona Fish Co. sold approximately 12 million pounds of tuna treated with tasteless smoke from 2002 through 2008.  (T. Ex. 499.033.)  The jury  awarded Plaintiff $4,488,888.60 at a 20 cents a pound royalty.  This figure is consistent with

Plaintiff's expert's finding that from January 2000 through October 2008

Defendants sold 22,444,443 pounds of tuna.

The number of facilities listed as verified tasteless smoke/filtered

wood smoke facilities pursuant to the United States Department of Commerce

("USDC") Seafood Inspection Program increased from Mr. Kowalski's four

suppliers in 1998 to twenty seven in March 2003.  (<u>Compare</u> T. Ex. 55 (9/98

USDC Cano Letter) <u>with</u> T. Ex. 85 (3/4/03 USDC List).)

**Long-Felt Need**

A finding that there was a long-felt but unmet need in the prior art

supports a finding of non-obviousness.  <u>Tec Air., Inc. v. Denso Mgf. Mich. Inc.</u>,

192 F.3d 1353, 1360-61 (Fed. Cir. 1999).

Defendants contended at trial that the government of Japan banned the

use of CO to treat seafood as early as 1992.  A 1997 letter from the FDA is

evidence that at least some employees of the FDA viewed the use of CO to treat

tuna as a potential violation of the Federal Food, Drug, and Cosmetic Act.  (T. Ex.

41 (8/14/97 FDA ltr).)  The evidence indicates that in 1997 and 1998 persons in the

seafood industry regarded the use of CO to treat frozen tuna as a disfavored

practice and some believed that the practice was illegal or banned by the United States government.  (T. Ex. 499.008 (9/12/98 Friend Affidavit).)

Defendants' witness Francisco Santos ("Mr. Santos") testified that there was a race in General Santos, Philippines, in the 1990's to achieve the preservative effect of CO treatment on frozen seafood by using smoke, but without a smoke taste.  Mr. Santos testified that product labeled as treated with smoke would be more desirable to consumers than CO-treated product.

**Copying and unsuccessful attempts by others**

Copying of the patented invention may also provide evidence of non-obviousness.  Diversitech Corp. v. Century Steps, Inc., 850 F.2d 675, 679 (Fed. Cir. 1988).

Mr. Santos testified that his Philippine companies Pacific Seas and then Frescomar could not perfect the filtration of smoke (despite having hired in 1999 PescaRich workers Makiputin, Develos, and Mirasol) and had to be taught how by Mr. Kowalski's technician at the end of 2002.  Stephen Fisher confirmed that testimony.  Mr. Ruther Tumaliuan testified that Frescomar was using (unsuccessfully) caustic soda as a filter until HISI taught them to remove it and filter with activated carbon.

15

**Independent invention by others**

The failure of others to develop alternatives to the invention may be evidence of non-obviousness.  In re GPAC, 57 F.3d at 1580.

Defendants did not present any contemporaneous documentary or written evidence showing that Mr. Yamaoka, Pescarich or any other person invented tasteless smoke prior to Plaintiff's March 12, 1997 patent application.

**Acceptance/Praise By Others**

Licensing by others supports non-obviousness.  In re Sernaker, 702 F.2d 989, 996 (Fed. Cir. 1983).  Recognition or praise in the industry also supports non-obviousness of the invention.  Polysius Corp. v. Fuller Col., 709 F. Supp. 560, 573 (E.D. Pa. 1989).

Plaintiff testified that he has issued licenses under the Kowalski Patent to Hilo Fish Co., Kona Fish Co., Phillips Foods, Jana Brands, Taiwan Seafood, Thai Ocean Venture, Kagoshima, East Asia, Angel Seafood, Acuatica (T. Ex. 557), Alfa (T. Ex. 499.003), and others.

An industry publication identified Plaintiff's tasteless smoke invention as one of only three "significant product developments in the seafood industry over the past 15 years."  (Pl. Ex. 186 (Wave article).)

**Invention Contrary To Accepted Wisdom**

The Yamaoka Patent, taught in favor of imparting smoke taste and odor to the seafood as opposed to removal of the smoke taste, flavor and odor-giving components of the smoke.  See, e.g., (T. Ex. "2" at K000290, K000294, K000297, T. Ex. "165" (Schich Patent Abstract).)

There is also evidence that the conventional wisdom was that one should filter out tar and other particulate matter from smoke, whereas Plaintiff alone taught that one must filter out the phenols which are in gaseous vapor form. (T. Ex. 168, T. Ex. "2" at K000295 at Col. 3, ln. 13-20, T. Ex. "165".)

**Expressions of Surprise**

Unexpected superior results from an invention support a finding that the invention was not obvious.  See, e.g., Baxter Travenol Labs., 952 F. 2d 388, 392 (Fed. Cir. 1991), In re De Blauwe, 736 F.2d 699, 705 (Fed. Cir. 1984).

In a letter dated July 11, 1996, Mr. Fisher wrote to Plaintiff:  "The new model of the Cryoice filter worked better than I could have ever expected. . . . When opened, the ice had changed to a color so yellow and ochre that we thought it had somehow collected sawdust."  (T. Ex. 20.)

17

## CONCLUSION RE OBVIOUSNESS AS A MATTER OF LAW

The jury reached reasonable conclusions on each of the four factual inquiries underlying the determination of obviousness. The jury found that the scope of prior art pertinent to Kowalski's invention was narrow, including only three earlier patents, and largely excluding references related to the generation of CO. The jury concluded that the Kowalski invention was distinguishable from the prior art because the filtered smoke generated by the process imparted no smoke taste to treated seafood. The jury concluded that a person with ordinary skill in the relevant field of art would have only limited experience with CO, further rejecting Defendants' contention that "tasteless smoke" and CO are essentially equivalent. Finally, and compellingly, the jury concluded that every secondary indicia of obviousness weighed in favor of a determination of non-obviousness. The Court finds that the conclusions of the jury were supported by, and were not contrary to the evidence.

## CONCLUSION

Based on a consideration of the evidence, the applicable law, and the jury's findings, the Court concludes that the Defendants have failed to prove by clear and convincing evidence that the Kowalski patent is invalid for obviousness.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: March 30, 2009

Kowalski v. Mommy Gina Tuna Resources, Civ. No. 05-00679 BMK; Kowalski v. Citra Mina
Seafood Corp, Civ. No. 06-00182 BMK; Kowalski v. Friend; Civ. No. 05-00787 BMK;
FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DEFENDANTS' OBVIOUSNESS
DEFENSE