IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI | ) | CIV. NO. 05-00679-BMK |
| | ) | CIV. NO. 05-00787-BMK |
| Plaintiff, | ) | CIV. NO. 06-00182-BMK |
| | ) | (CONSOLIDATED) |
| vs. | ) | |
| | ) | |
| MOMMY GINA TUNA | ) | ORDER DENYING |
| RESOURCES, et al. | ) | DEFENDANTS' MOTIONS FOR |
| | ) | JUDGMENT |
| Defendants. | ) | NOTWITHSTANDING THE |
| _____ | ) | VERDICT |
| WILLIAM R. KOWALSKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEGRAL SEAFOOD LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| WILLIAM R. KOWALSKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD FRIEND, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT
## <u>NOTWITHSTANDING THE VERDICT</u>

In the above captioned consolidated cases, Plaintiff William R.

Kowalski obtained a jury verdict against Defendants Momma Gina Tuna

Resources, King Tuna, Inc., Joaquin T. Lu and Citra Mina Seafood Corp.

(collectively "Defendants")[1] on December 12, 2008 for willful infringement of

Kowalski's U.S. Patent 5,972,401 ("Kowalski patent").  At trial, Defendants

moved for judgment as a matter of law on the following issues: (1) willful

infringement, (2) damages, (3) invalidity as beyond the written description, and

(4) invalidity for obviousness.  Defendants now renew these motions and move for

Judgment Notwithstanding the Verdict.

Pursuant to Local Rule 7.2(d), the Court has deemed these Motions

appropriate for disposition collectively and without a hearing.  After careful

consideration of the Motions, as well as the supporting and opposing memoranda

---

[1]  In addition to the Defendants here named, Mr. Kowalski also brought suit against Richard Friend and his company Seafriend.  Prior to trial, however, Mr.Kowalski dismissed all claims for willful infringement and for monetary damages against Friend and Seafriend.  Also, subsequent to the initiation of this suit, Mr. Kowalski joined Citra Mina Property Holdings, GJ Fresh, LLC, Integral Seafood, LLC and Mommy Gina Tuna Resources, Inc (collectively "25(c) parties") under Fed. R. Civ. P. 25(c) as successors in interest to the originally named defendants. However, the parties agree that the independent actions of the 25(c) parties were unrelated to the determination damages, patent validity or willfulness and are therefore irrelevant to the outcome of the present Motions.

of the parties, Defendants' Motions for Judgment Notwithstanding the Verdict are

DENIED.

## STANDARD OF REVIEW

When a court denies a motion for judgment as a matter of law made

under Rule 50(a), "the court is considered to have submitted the question to the

jury subject to the court's later deciding the legal question raised by the motion."

Fed. R. Civ. P. 50(b).  After trial, "the movant may file a renewed motion for

judgment as a matter of law," and the court may "(1) allow judgment on the

verdict, if the jury returned a verdict; (2) order a new trial; or, (3) direct the entry

of judgment as a matter of law."  Fed. R. Civ. P. 50(b).

The jury's verdict will not be disturbed provided it is supported by

"substantial evidence."  Wallace v. City of San Diego, 479 F.3d 606, 624 (9th Cir.

2007).  "Substantial evidence is evidence adequate to support the jury's

conclusion, even if it is also possible to draw a contrary conclusion from the same

evidence."  Id. (quoting Johnson v. Paradise Valley Unified School Dist., 251 F.3d

1222, 1227 (9th Cir. 2001)).  A new trial is appropriate if the clear weight of

evidence is against the jury's verdict.  Landes Const. Co., Inc. v. Royal Bank of

Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).

ANALYSIS

I.    Willful Infringement

Establishing willful infringement involves both an objective and a subjective component.  First, it must be shown that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."   In re Seagate, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Second, it must be shown "that this objectively-defined risk . . . was either known or so obvious it should have been known. . . ."  Id.  Willful infringement must be proven by clear and convincing evidence.  Id.

The Court found that Defendants infringed the Kowalski patent. (Order Further Construing the Kowalski Patent, and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment on Infringement 17-18.) Although the Defendants raised several defenses to infringement during the course of litigation, only three – written description, enablement and obviousness – were presented to the jury.  The jury rejected Defendants' defenses and found that Defendants had wilfully infringed the Kowalski patent.  (Special Verdict Form 2-9.)  Defendants challenge this conclusion and urge the Court to grant Judgment Notwithstanding the Verdict on the issue of willfulness, or in the alternative, order a new trial.

4

Infringement was never a particularly close issue in this case. Defendants never contended that they didn't treat seafood with smoke filtered so as not to impart smoked taste; instead Defendants based their opposition to Mr. Kowlaski's Motion for Summary Judgment on an argument about scope of the claims of the Kowalski patent.[2]  (Def. Opp. to Mot. for Summary Judgment on Infringement 10-13.)  However, Defendants argue that their reasonable belief in the invalidity of the Kowlaski patent proves that the jury's verdict of willful infringement was in error.  The Court disagrees.

While Defendants may have held a common sense belief that the substance of the Kowalski patent was not new, this does not amount to a "substantial, reasonable" defense for the purposes of willful infringement. ResQNet.com, Inc.  v. Lansa, Inc., 533 F. Supp. 2d. 397, 420 (S.D.N.Y. 2008). Invalidity defenses in patent law are complex legal constructs.  At trial, Defendants introduced no legal opinion they relied on in relation to their invalidity defenses. Instead, Mr. Lu stated that he relied in part on the advice of Mr. Friend,

---

[2]  Defendants argued that the claims of the Kowalski patent as construed by the Court claimed a process that effected no change whatsoever in the flavor of the treated fish.  This interpretation was rejected by the Court.  (Order Further Construing the Kowalski Patent and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment on Infringement 17.)

a non-attorney with ties to Mr. Yamaoka and Pescarich, competitors of Mr.

Kowalski.  Furthermore, Mr. Lu testified that he never thoroughly read U.S. Patent

No. 5,484, 619 entitled "Method for Curing Fish and Meat by Extra-Low

Temperature Smoking" ("Yamaoka patent"), although the Yamaoka patent is

highly relevant to Defendants' obviousness defense.  No adverse inference can be

drawn from the absence of an attorney's opinion.  In re Seagate, 497 F.3d at 1371.

Nonetheless, substantial evidence was introduced showing that Defendants' belief

in the invalidity of the Kowalski patent, even if sincere, was recklessly formed.

Because the jury based its finding of willfulness on substantial evidence,

Defendants' Motion is DENIED.

II.     Damages

        Damages awarded to a prevailing party in patent litigation must be

"adequate to compensate the infringement but in no case less than a reasonable

royalty."  35 U.S.C. § 284.  In determining a reasonable royalty rate, courts look

first to evidence of a royalty rate established in the regular course of business.

Monsanto Co. v. McFarling, 488 F.3d 973, 978-79 (Fed. Cir. 2007).  Licenses

negotiated in the context of litigation or under the threat of litigation cannot be

used to determine an established royalty rate.  Rude v. Wescott, 130 U.S. 152, 165

(1889).  Likewise, the probative value of licenses negotiated after the commencement of infringement or in the context of litigation for determining a reasonable royalty rate may be limited.  <u>Sunstar, Inc. v. Alberto-Culver Co.</u>, 2004 WL 189927, *30 (N.D. Ill. 2004).

Here, the jury fixed a reasonable royalty rate of 20¢ per pound of infringing fish sold by Defendants.  (Special Verdict Form 9.)  The jury calculated that Defendants sold more than twenty-two million pounds of infringing fish and awarded Mr. Kowalski a total of $4,488,888.60 in damages.  <u>Id.</u>  Defendants challenge the jury's findings as to both the royalty rate and the total amount of sales.  The Court finds that the jury's findings are supported by substantial evidence.

   a.  20¢ per pound royalty rate

Defendants argue that the jury erred in awarding damages to Mr. Kowalski in the amount of a 20¢ per pound royalty rate.  Defendants point to several licensing agreements entered into by Mr. Kowalski at the rate of 8¢ per pound for tuna.  However, the evidence is uncertain that any of these licenses predated infringement or were outside the context of litigation.  Mr. Kowalski

7

points to at least one license that set royalties higher than 8¢ per pound.  (Def. Ex.

A.)  Mr. Kowalski also argues that in the absences of an established royalty rate,

the testimony of Plaintiff's expert, Mr. Francom, provides substantial evidence

supporting the jury's determination of a 20¢ per pound royalty rate.  The Court

agrees that there is substantial evidence supporting the jury's finding of a

reasonable royalty rate of 20¢ per pound.

      b.    Total pounds sold

Defendants argue that the total pounds of fish sold cannot have been

greater than 13.4 million pounds because that is the amount sold by Hilo Fish, and

Mr. Kowalski himself testified that Hilo Fish was the top seller of filtered wood

smoked tuna.  However, Mr. Kowalski argues that his testimony was only that Hilo

Fish is currently the top seller, and that the 13.4 million pound number cannot be

considered a ceiling for total sales of infringing fish by Defendants.  Defendants'

own expert, Mr. McEnerney, used roughly the same estimate of total poundage in

his calculation of damages as did Mr. Francom.  Furthermore, if more accurate

records for calculating poundage existed, they were under the control of

Defendants.  Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir.

1983)("[A]ny adverse consequences must rest on the infringer when the inability

to ascertain [damages] is due to the infringer's own failure to keep accurate or complete records."). There is substantial evidence to support the jury's findings on damages; Defendants Motion for Judgment Notwithstanding the Verdict on damages is DENIED.

III.   <u>Written Description</u>

A patent must contain a written description that describes "in [] full, clear, concise, and exact terms" what the inventor invented. 35 U.S.C. § 112. The claims of a patent "may be no broader than the supporting disclosure," otherwise the claims themselves are invalid. <u>Gentry Gallery, Inc. v. Berkline Corp.</u>, 134 F.3d 1473, 1480. The determination of whether a patent satisfies the written description requirement is a question of fact. <u>Id.</u> at 1479.

Here, the question is whether the claims of the Kowalski patent exceed the specifications with regard to temperature limitations. The Court has construed the claims of the Kowalski patent to include no limitation on the temperature at which the invention is practiced. (Order Granting Motion for Clarification and Reconsideration of Claims Construction Order 6-7.) The specifications of the patent repeatedly reference successively more narrow "operable," "preferred," and "optimal" temperature ranges. (Def. Ex. A, col. 6, ln.

55-60; col. 11, ln. 45-52; col. 16, ln. 38-46.)  Defendants argue that these

temperature ranges represent a limitation on Mr. Kowalski's invention that the

claims of the patent exceed.

Mr. Kowalski argues that the jury's verdict rejecting Defendants'

written description defense was based on substantial evidence.  The Court agrees.

While it is undisputed that the Kowalski patent references specific temperature

ranges, the relevant inquiry is whether a person of ordinary skill in the art at the

time the patent was granted would have understood theses ranges to be a necessary

limitation on the scope of the invention.  Mr. Kowalski points to evidence that a

person of ordinary skill in the art would be aware that smoke can be generated at

temperatures outside those referenced in the specifications of the Kowalski patent;

therefore a person of ordinary skill in the art would rightly view the temperature

ranges referenced as a preferred embodiment rather than as a necessary limitation.

(Pl. Ex. A.)  Mr. Kowalski also argues that the temperature ranges set forth in the

Kowalski patent are aimed at the desirable goal of reducing carcinogenic

components in the smoke, rather than a necessary limitation connected to the

primary goal of the patent: generating tasteless smoke.  (Pl. Opp. 23-25.)  There is

substantial evidence to support these interpretations of the Kowalski patent's

specifications.  The jury's determination that the Kowalski patent was not invalid for exceeding the patent's written description was based on substantial evidence, therefore Defendants' Motion is DENIED.

IV.   <u>Obviousness</u>

A patent is invalid "if the difference between the subject matter to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103.  While obviousness is ultimately a question of law to be decided by the court, the obviousness inquiry turns on four underlying factual determinations to be made by the trier of fact.  <u>Graham v. John Deere Co. Of Kansas City</u>, 383 U.S. 1, 17-18 (1966).  The factual determinations that underlie the court's ultimate decision on obviousness are (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue "; (3) "the level of ordinary skill in the pertinent art"; and, (4) "secondary considerations such as commercial success, long felt but unsolved needs, failure of others, etc."  <u>Id.</u> at 17.

Defendants challenge the conclusions reached by the jury on each of these factual determinations.  The Court finds that the jury's conclusions are supported by substantial evidence and should not be disturbed.

a.    Prior art

A reference is considered prior art if it is within the field of the inventor's endeavor or, if outside the inventor's field of endeavor, reasonably pertinent to the problem faced by the inventor.  In re Clay, 966 F.2d 656, 659 (Fed. Cir. 1992).  The Court determined that the Yamaoka patent is appropriately considered prior art for the purposes of analyzing the Kowalski patent for obviousness.  (Order Denying Defendants' Motion for Partial Summary Judgment on Invalidity of Kowalski Patent for Obviousness and Denying Plaintiff's Motion for Partial Summary Judgment on Defendants' Obviousness and Anticipation Defenses 13.)  In its verdict entered December 12, 2008, the jury found that U.S. Patent No. 927, 418 entitled "Process for Manufacturing Gas from Wood" ("418 patent") and U.S. Patent No. 4, 522,835 entitled "Process and Composition for Producing and Maintaining Good Color in Fresh Meat, Fresh Poultry and Fresh Fish" ("835 patent") are also prior art.  (Special Verdict Form 3-4.)  The jury found

that five other patents[3] were not prior art for the purposes of the obviousness

analysis of the Kowalski patent.  Defendants challenge the jury's rejection of these

patents as prior art.

        The Special Verdict form does not reveal, and the Court will not

speculate as to, the precise reasoning that went into the jury's decision to include

some prior patents in the category of prior art while excluding others.  However,

the Court finds that there is substantial evidence supporting the jury's

determinations.  There are several reasons the rejected patents may have been

considered by the jury to be outside the scope of prior art:  some were unrelated to

food preservation; some taught only the burning of coal to produce smoke, not the

burning of wood or other organic materials; and all the rejected patents relate to

using or producing carbon monoxide ("CO") rather than the use or production of

filtered smoke.  Defendants based much of their obviousness argument on the

premise that the filtered smoke used in Mr. Kowalski's process should be

considered equivalent to CO.  This argument, however, was contested by Mr.

Kowlaski.  Mr. Kowlaski pointed to differences between filtered smoke and CO,

including the effect they had on the color of treated fish, the different way the two

---

[3] U.S. Patent No. 1,861,452; U.S. Patent No. 2,527,197; U.S. Patent No. 4,386,942; U.S. Patent No. 1,027,681; and U.S. Patent No. 3,122,748.

substances were perceived by the public and the different way the two substances were treated by regulator agencies in the United States and elsewhere.  While the Defendants may discount these differences, they represent substantial evidence on which the jury may have based their conclusions.

      b.     Person of ordinary skill

The jury found that "[a] person of ordinary skill in the relevant field would have been familiar with (1) the steps of burning organic material to produce smoke; (2) filtering the resulting smoke; (3) applying the filtered smoke to seafood to preserve the appearance of freshness; but (4) would not necessarily have more than limited experience with various methods of producing and applying carbon monoxide to seafood to preserve the appearance of freshness."  (Special Verdict Form 6.)  The jury rejected Defendants' contention that a person of ordinary skill in the art "would have experience producing carbon monoxide gas by [] mixing specific chemicals and [] by burning organic material (including coal) and filtering the products of that combustion to retain only the carbon monoxide gas, and" that a person of ordinary skill in the art "would be familiar with various means of applying the carbon monoxide gas to seafood to preserve the appearance of freshness."  Id.  Defendants contend that the jury erred in its finding that a person

of ordinary skill in the field relevant to the Kowalski patent would have only limited experience with the production and use of CO.

The Court finds that the jury's conclusions about the knowledge of a person of ordinary skill in the relevant field are supported by substantial evidence. Here, as in the discussion of prior art above, the central question is whether a valid distinction can be drawn between filtered smoke and CO. Defendants argued that there is no distinction, but the jury clearly disagreed. The Court sees no reason to disturb the jury's verdict on this point.

      c.     Difference between the prior art and the Kowalski patent

The jury found differences between the prior art and the teachings of the Kowalski patent. Specifically, the jury found that the Kowalski patent "taught the use of smoke, filtered below the threshold for imparting a smoked taste, for preserving the appearance of freshness in seafood" while "[t]he prior art taught the use of filtered smoke that retained a smoked taste and the use of chemical carbon monoxide for preserving the appearance of freshness in food." (Special Verdict Form 7.) Defendants contest this finding, contending that there was no difference between the Kowalski patent and the prior art.

Here, Defendants make two arguments.  First, that filtered smoke and CO are indistinguishable.  As discussed above, there was substantial evidence introduced in this case to support a jury finding that filtered smoke is distinguishable from CO.  Second, Defendants argue that the Yamaoka patent covers the same essential process as the Kowalski patent.  This argument has been made and rejected repeatedly:  when Mr. Kowalski was awarded his patent, on Motion for Summary Judgment before this Court, and by the jury in reaching its final verdict.  At each stage it has been determined that only Kowalski patent teaches a method for filtering smoke such that no smoke taste, i.e. smoked taste or smoky taste, is imparted to seafood treated with the filtered smoke.  There is substantial evidence to support the jury's finding that there were differences between the Kowalski patent and the prior art.

      d.     Secondary considerations

Analysis of secondary considerations is a necessary step in the obviousness inquiry.  WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed. Cir. 1999).  Here, the jury found the following secondary considerations to be present in this case:  commercial success due to the merits of the claimed invention; satisfaction of a long felt need by the invention;

unsuccessful attempts by others to find the solution provided by the invention;

copying of the invention by others; unexpected or superior results; praise and

licencing of the invention by others; evidence the invention proceeded in a

direction contrary to accepted wisdom in the field; surprise and disbelief regarding

the invention by experts and those skilled in the art.  (Special Verdict Form 7-8.)

The jury did not find that the invention had been independently invented by others

before or at the same time the named inventor thought of it.  Id. at 8.  All these

factual findings weigh against an ultimate determination of obviousness.

Defendants contest all these factual findings.

　　　　　The Court declines to revisit each of these factors individually.  The

Court does find that each of these jury findings is supported by substantial

evidence.   Although Defendants point to contradictory evidence, all the evidence

they point to is in the nature of testimony and other evidence that the jury had an

ample opportunity to weigh and assess for credibility.  Defendants point to nothing

in the record that would justify undoing the conclusions appropriately reached by

the jury in its role as trier of fact.

　　　　　The Court finds that the jury's factual determinations related to

obviousness are supported by substantial evidence.  Defendants' Motion for

Judgement Notwithstanding the Verdict, or in the Alternative for a new trial on the issue of obviousness is DENIED.

CONCLUSION

For the foregoing reasons the Defendants' Motions for Judgment as a Matter of Law on (1) willful infringement, (2) damages, (3) invalidity as beyond the written description, and (4) invalidity for obviousness are DENIED.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: March 30, 2009

Kowalski v. Mommy Gina Tuna Resources, Civ. No. 05-00679 BMK; Kowalski v. Citra Mina Seafood Corp, Civ. No. 06-00182 BMK; Kowalski v. Friend; Civ. No. 05-00787 BMK; ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT